COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


RASHID AMIR MUSTAFA

                                              MEMORANDUM OPINION[*] BY
v.       Record No. 2126-08-2                 JUDGE RANDOLPH A. BEALES
                                                   JANUARY 12, 2010

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                              David H. Beck, Judge

            Ronald Junho Hur, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Susan M. Harris, Assistant Attorney General (William C. Mims,
            Attorney General, on brief), for appellee.


        Rashid Amir Mustafa (appellant) was convicted by a jury of grand larceny, in violation of

Code § 18.2-95.  Appellant on appeal argues that the trial court committed reversible error when it

denied his motion to suppress.  Finding no reversible error, we affirm appellant's conviction for the

following reasons.

                                       I.  BACKGROUND

        On October 6, 2006, a purse, a .9 mm pistol (the firearm), and other items were stolen

from a car in Spotsylvania County.  About one hour after the theft, a credit card taken from the

stolen purse was used at a Wal-Mart in Spotsylvania County.  Wal-Mart's surveillance cameras

depicted appellant both inside the store and driving a white Pontiac vehicle bearing Virginia

license plates in the store's parking lot.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 6, 2006, the firearm was recovered from a white Pontiac vehicle bearing Virginia license plates that was parked in a high school parking lot in Sidney County, Ohio. According to the Sidney County authorities, appellant was present and consented to a search of the vehicle.

Appellant was charged in Spotsylvania County for grand larceny, and he filed a pretrial motion to suppress evidence seized from the vehicle in Ohio, including the firearm.

At the suppression hearing in the Spotsylvania Circuit Court, Sidney County, Ohio Police Officer Bryce Stewart testified that, on the night of November 6, 2006, Sidney Lehman High School held a "very formal" alumni auction. At approximately 10:20 p.m., Officer Stewart responded to a report that "an unknown black male" had possibly broken into a BMW automobile in the high school's parking lot. The officer noticed appellant sitting in a parked vehicle in this parking lot. The parking lot was full of cars, but appellant was the only other person actually in the parking lot at the time.

Officer Stewart pulled his patrol car closer to appellant's vehicle, and approached the vehicle on foot. Appellant was sitting in the driver's seat, and the vehicle's electrical and mechanical equipment did not appear to be in use. The driver's side window was down. The officer noted that appellant wore "a T-shirt, pants, jeans, sneakers" – certainly not the significantly more formal attire worn by the alumni auction patrons inside the high school.

Officer Stewart introduced himself and asked appellant what he was doing there. Appellant told Stewart that he intended to meet a female named Denise Reed "for sexual relations" and that he was nervous. Appellant said that his name was Patrick Goins, and handed the officer a Michigan birth certificate bearing this name. While Officer Stewart performed a computer check on appellant's claimed identity, Officer Baker (who had been assigned to the alumni auction inside the high school) canvassed the auction attendees and determined that there

was no one named Denise Reed present. Another officer had also arrived by this time. Officer Stewart asked appellant "if he wouldn't mind stepping from the vehicle." Appellant replied, "That's fine," and exited the vehicle.

Officer Stewart learned that Patrick Goins was actually incarcerated, and then he told appellant that he did not believe appellant was meeting anyone named Denise Reed or that he was named Patrick Goins. Officer Stewart testified that he was standing next to appellant near the trunk of the vehicle by this time, although there is no indication in the trial court record how or why appellant was standing in that location. Officer Baker then asked appellant, "Do you mind if we search your vehicle?" Appellant indicated that he did not mind, Officer Stewart testified. A marijuana cigarette was found in the driver's area. Appellant was placed under arrest as Officer Martin, who was continuing to search the car, found the .9 mm pistol.

The trial court found that Officer Stewart reasonably "approached [appellant] and asked a few questions" and that "[reasonable] articulable suspicion mount[ed]" as the details appellant provided to the officer failed to add up. Furthermore, the trial court found that appellant voluntarily stepped out of the vehicle and voluntarily consented to the search of the vehicle. Therefore, the trial court denied appellant's motion to suppress.

II. ANALYSIS

On appeal of the denial of a motion to suppress, the burden is on the appellant to demonstrate reversible error. Emerson v. Commonwealth, 43 Va. App. 263, 272, 597 S.E.2d 242, 246 (2004). We consider that evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court, and grant to the Commonwealth all reasonable inferences that may be fairly deducible from that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). Furthermore, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or 'without evidence to support

them.'"  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).  We review *de novo* both questions of law and the "trial court's application of defined legal standards to the particular facts of a case."  Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 703 (2002).

Consensual encounters do not implicate a citizen's protections under the Fourth Amendment.  See United States v. Drayton, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."); Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) ("Police officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case.").  A "consensual encounter becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"  Id. (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Appellant argues that, while the encounter here may initially have been consensual, it progressed into a seizure when he stepped out of his vehicle at the officer's request.  However, the trial court expressly found that appellant "voluntarily stepped out of the vehicle." "'[V]oluntariness is a question of fact to be determined from all the circumstances.'"  Harris v. Commonwealth, 266 Va. 28, 37, 581 S.E.2d 206, 212 (2003) (quoting Ohio v. Robinette, 519 U.S. 33, 40 (1996)).

> There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated.  Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record.  The controlling inquiry is the effect of such matters on a reasonable person in the light of all the surrounding circumstances.

Malbrough, 275 Va. at 171, 655 S.E.2d at 5 (deferring to the trial court's factual findings relating to whether the defendant was detained for Fourth Amendment purposes). Thus, we defer here to the trial court's finding that appellant voluntarily stepped out of the vehicle, as this factual finding was not plainly wrong under the totality of the circumstances.

Here, upon observing appellant – the only individual presently in the high school parking lot where a BMW automobile reportedly had recently been broken into – Officer Stewart, quite reasonably, approached appellant as part of his investigation.[1] See Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1988) (characterizing "police questioning as a tool in the effective enforcement of the criminal laws"). It is certainly well established that "[p]olice officers are free to approach individuals and ask questions." Davis v. Commonwealth, 37 Va. App. 421, 428, 559 S.E.2d 374, 377 (2002). Appellant offered an explanation for why he was sitting in a parked car in the parking lot, identified himself, and handed the officer a birth certificate. There is no evidence in the record that Officer Stewart actually asked appellant for the birth certificate or any other form of identification; however, even if the officer had requested identification from appellant, "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001).

After Officer Stewart began attempting to verify appellant's claimed identity, he asked appellant "if he wouldn't mind stepping from the vehicle." Officer Stewart made a request, not a demand. See Roulhac v. Commonwealth, 50 Va. App. 8, 16, 646 S.E.2d 4, 8 (2007) (finding that, although the encounter later became a seizure when the police officer grabbed the

---

[1] Officer Stewart testified he pulled his police cruiser close to, but "not quite in front of," appellant's vehicle. Therefore, appellant's vehicle was not blocked by Officer Stewart's police cruiser. Contra Bolden v. Commonwealth, 263 Va. 465, 472, 561 S.E.2d 701, 705 (2002) (holding that the police's blocking of Bolden's car was one of two factors supporting a finding that Bolden was detained for Fourth Amendment purposes).

defendant's wrist, the officer initially "did not make any threats or demands"). Furthermore, this request was not amplified by factors that *may* indicate a seizure has occurred, such as "'the threatening presence of several officers,[2] the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Appellant agreed to step out of the vehicle, and there is no indication in the trial court record that his decision to do so was involuntary. Thus, the encounter remained consensual.[3] See Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (holding that a consensual encounter "remain[s] consensual as long as the citizen voluntarily cooperates with the police").

Even assuming without deciding that this consensual encounter became a seizure at some point after appellant stepped out of the vehicle, the trial court still appropriately denied

---

[2] Officer Stewart's testimony established that at most three officers were present when he requested that appellant step out of the vehicle. However, there was no indication at the suppression hearing that the officers' presence was threatening in any way. The "mere presence of officers who are uniformed and armed does not constitute a 'show of authority' that transforms a consensual encounter into a seizure" under the Fourth Amendment. Dickerson v. Commonwealth, 266 Va. 14, 18, 581 S.E.2d 195, 197 (2003) (quoting Drayton, 536 U.S. at 234).

[3] Appellant also contends that Officer Stewart made a "specific allegation of criminal wrongdoing" against him and that this "factor is highly significant among the totality of factors" in determining whether the encounter with Officer Stewart became a seizure. Davis, 37 Va. App. at 431-32, 559 S.E.2d at 379 (citing McGee, 25 Va. App. at 196, 487 S.E.2d at 260). However, the evidence here does not support this contention. Although Officer Stewart apparently told appellant that he matched the description of the person suspected of breaking into the BMW in the parking lot, this statement alone was not a *specific* allegation of criminal wrongdoing. Contra McGee, 25 Va. App. at 196, 487 S.E.2d at 260 (where the police officer specifically stated that he "received a call that [the defendant] was on this corner selling drugs"). In addition, while Officer Stewart subsequently told appellant that he did not believe his story, the officer said this after he learned that Patrick Goins was incarcerated. Thus, even if we were to assume without deciding that this statement made appellant "'the focus of [the] investigation,'" id. at 200, 487 S.E.2d at 262 (quoting State v. Ossey, 446 So. 2d 280, 285 (La. 1984)), the officer's statement certainly occurred *after* reasonable articulable suspicion had developed here.

appellant's motion to suppress because reasonable articulable suspicion amply justified any seizure here. "A police officer may elevate a consensual encounter with a citizen into an investigatory detention only if the officer has a 'reasonable suspicion supported by articulate facts that criminal activity may be afoot, even if the officer lacks probable cause.'" Jones v. Commonwealth, 52 Va. App. 548, 559, 665 S.E.2d 261, 267 (2008) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). Viewing the facts in the light most favorable to the Commonwealth, as we must because it was the prevailing party below, and judging the police conduct here "from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions," Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995), reasonable articulable suspicion existed under the totality of the circumstances here.

As the trial court found, the facts here presented "an accumulating thing occurring with one fact laid on top of another of reasonable articulable suspicion . . . ." The Sidney County, Ohio authorities received a report that a BMW automobile parked in the high school parking lot may have been broken into during the alumni auction. Police officers, including Officer Stewart, responded promptly to this report. Officer Stewart observed only one person – appellant – in the parking lot. Appellant sat alone in the driver's seat of his vehicle. On the night that a "very formal" alumni auction was held inside the high school, Officer Stewart testified that appellant wore "a T-shirt, pants, jeans, sneakers" – creating a strong inference that appellant was not attending the event inside.

Admitting to the officer that he was nervous, appellant claimed that he was meeting Denise Reed "for sexual relations." Officer Baker learned that there was no one named Denise Reed attending the alumni auction. While this fact, by itself, did not exclude the possibility that appellant might perhaps be telling the truth, the trial court correctly found that it was a relevant, probative factor to consider as reasonable articulable suspicion accumulated here. "Indeed, the

- 7 -

Supreme Court has explicitly recognized that conduct observed by police may be 'ambiguous and susceptible of an innocent explanation' and yet still justify an investigatory stop, allowing the officers to 'detain the individuals to resolve the ambiguity.'" Rudolph v. Commonwealth, 277 Va. 209, 214, __ S.E.2d __, __ (2009) (quoting Illinois v. Wardlow, 528 U.S. 119, 125 (2000)).

Moreover, as recounted above, appellant claimed he was named Patrick Goins and produced a Michigan birth certificate bearing this name; however, very close in time to when appellant voluntarily stepped out of the vehicle, Officer Stewart learned that Patrick Goins was actually incarcerated. Understandably, this information contributed even more to the officer's impression that "things weren't adding up" – especially given that no one named Denise Reed was present, either – and the officer concluded that further investigation was necessary in light of all of his observations here.

Based on these facts, the Sidney County police officers here certainly had "'a particularized and objective basis' for suspecting" appellant was involved in criminal activity. Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Accordingly, even if we were to assume that appellant became seized at some point after he voluntarily stepped out of his vehicle, the police conduct here was reasonable in light of all the circumstances.[4]

Appellant also contends that, while the trial court record reflects that he consented to a search of his vehicle, this consent was involuntary. "As a general rule, 'a search authorized by consent is wholly valid,'" Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218

---

[4] Appellant asserts on appeal that any detention occurring here was "too long in duration" and that the police should "have attempted to locate the individual who reported the incident at the school or anyone who owned a BMW." Because appellant did not raise these specific arguments at trial, we will not consider them on appeal. See Rule 5A:18.

(2005) (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222 (1973)), although consent given involuntarily is invalid. <u>Id.</u> However, the trial court expressly found that appellant voluntarily consented to the search of his vehicle, and we defer on appeal to the trial court's factual finding here. <u>See</u> <u>Sykes v. Commonwealth</u>, 37 Va. App. 262, 268, 556 S.E.2d 794, 797 (2001).

In <u>Lowe v. Commonwealth</u>, 218 Va. 670, 239 S.E.2d 112 (1977), the Supreme Court affirmed a trial court's finding that the defendant validly consented to the search of an apartment when the evidence showed that the defendant was in custody, was handcuffed, was sitting on the floor, and was surrounded by police officers. <u>Id.</u> at 677-78, 239 S.E.2d at 117. Here, it is undisputed that appellant was not handcuffed when he consented to the vehicle search, and there is no evidence that appellant had been physically restrained in any other way.[5] Based on these facts here, we conclude that appellant's "consent was 'the product of an essentially free and unconstrained choice'" and that appellant's "will had not 'been overborne and his capacity for self-determination [had not been] critically impaired." <u>Id.</u> at 678, 239 S.E.2d at 117 (quoting <u>Schneckloth</u>, 412 U.S. at 225).

In sum, we conclude that the trial court did not err when it denied appellant's motion to suppress.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's grand larceny conviction.

<u>Affirmed.</u>

---

[5] Appellant claims that he was "physically removed to the rear of his vehicle." However, the claim that he was "physically removed" in any way by the officers here is unsupported by the evidence.